IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDWARD BROOKS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 06 C 6966 |
| v. ) | |
| ) | Suzanne B. Conlon, Judge |
| R. JAMES NICHOLSON, Secretary, U.S. ) | |
| Department of Veterans Affairs, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Edward Brooks, Jr. ("Brooks") sues R. James Nicholson, Secretary, U.S. Department of Veterans Affairs ("the Department") for federal employment discrimination on the basis of race and age in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and the Age Discrimination in Employment Act, 29 U.S.C. § 633(a). The Department moves for summary judgment. For the reasons set forth below, the motion is granted.

## BACKGROUND FACTS

The following facts are undisputed unless otherwise noted. Brooks is a 61 year-old African-American male formerly employed by the Department. Pl. Facts. ¶ 1. He began work as a Veteran Affairs police officer on June 27, 2004, and was subject to a one-year probationary period ending on June 26, 2005. *Id.* ¶¶ 1-2. On March 23, 2005 during the probationary period, Police Chief Jerry Brown certified that Brooks was performing satisfactorily and recommended he be retained at the end of his probation period. *Id.* ¶ 6. However, Chief Brown later decided not to retain Brooks beyond the probationary period due to an incident that took place on May 27, 2005.

That day, Brooks reported to work the "B shift" at the Hines Veterans Affairs Hospital, which required him to patrol designated hospital grounds from 7:00 am to 5:00 pm. *Id.* ¶ 7. During Brooks' shift, Lieutenant Michael Leonard and Lieutenant Percy Henderson were both on duty. Def. Facts ¶ 14. Brooks' immediate supervisor, Sergeant James Henderson, was off-duty, but was available on a government-issued Nextel phone. *Id.* ¶¶ 9, 14. Officer Michael Unthank performed the duties of lead officer that day. Pl. Facts ¶ 10. At approximately 2:30 pm, Brooks received a call from his banker requesting Brooks to come to the bank to sign loan documents for a home purchase. Pl. Facts ¶ 12. Brooks notified Officer Unthank that he needed to leave for the remainder of his shift. *Id.* Officer Unthank advised Brooks that he did not have authority to grant leave. *Id.* ¶ 13.

Only supervisors, including sergeants and lieutenants, have authority to grant or deny leave requests. Def. Facts. ¶ 7. Police policies provide that if a sergeant is not present to grant a leave request, the sergeant should be contacted by telephone. Def. Facts Ex. 1. Brooks previously attended an orientation where instructions were given that either an immediate supervisor or another management official should be contacted for leave approval. Def. Facts ¶¶ 7, 10-13. Nevertheless, Brooks testified that on May 27, 2005 he was unaware of the specific procedure required for leave requests, and was also unaware of the contact information of available supervisors at the time. Pl. Facts ¶ 13.

Brooks prematurely left his shift at approximately 3:15 pm to sign the loan documents, without attempting to reach a supervisor on his radio or telephone. Def. Facts. ¶ 20. Brooks contends he departed without authorization because he believed that Officer Unthank was responsible for forwarding his request to the supervising officer, Sergeant Henderson. *Id.* ¶ 20.

2

Brooks speculated that a supervising officer would have granted leave had a supervisor been available. *Id.* at Ex. 5.

Following this incident, Sergeant Henderson requested that Brooks provide a written explanation concerning abandonment of his post without authorization. Pl. Facts ¶ 22; Def. Facts Ex. 4. Brooks responded that he left because he believed that authorization would have been given had he asked the proper authority for it. Def. Facts ¶ 24.

In a letter dated June 20, 2005, the Department advised Brooks that he would be discharged on June 24, 2005 due to his abandoned post on May 27, 2005. Def. Facts ¶ 26. The letter was sent to Brooks by Network Courier Service on June 24, 2005, and was placed "between the front doors" of Brooks' prior residence. *Id.* at Ex. 2b. Brooks did not receive notice of this letter until June 30, 2005 by facsimile, after the probationary period ended. *Id.* at ¶ 27.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Adelman-Reyes v. Saint Xavier Univ.*, --- F.3d ----, 2007 WL 2684813, at *2 (7th Cir. Sept. 14, 2007). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995). The movant has the burden of establishing there is no genuine issue of material fact. *Celotex Corp. v.*

3

*Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the non-movant must set forth specific facts demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). A scintilla of evidence in support of the non-moving party's position is not sufficient to defeat a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 250.

## II. BROOKS' DISCRIMINATION CLAIMS

Absent direct evidence of discrimination, Brooks must show that (1) he was a member of a protected class; (2) he was meeting the Department's legitimate performance expectations; (3) the Department took an adverse employment action against him; and (4) the Department treated at least one similarly situated individual outside his protected class more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005); *Little v. Ill. Dept. of Revenue*, 369 F.3d 1007, 1011 (7th Cir. 2004). If Brooks establishes a *prima facie* case, the Department must articulate a nondiscriminatory reason for firing him. *Little*, 369 F.3d at 1011. In response, Brooks must proffer competent evidence that the Department's stated nondiscriminatory reason was a pretext for unlawful discrimination. *Id.* Brooks has the ultimate burden of proving intentional discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S.248, 253 (1981); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993).

4

The Department argues Brooks cannot establish a *prima facie* case because there is no evidence that Brooks met its legitimate expectations or that he was treated less favorably than similarly situated probationary status officers outside the protected class. Brooks counters that these issues are disputed, as well as issues of whether he was a career or probationary employee and whether his termination was pretextual.

### A. Brooks' Probationary Status

Brooks contends that because he received written notice of his termination after his probationary period ended, he was a career employee entitled to progressive disciplinary measures rather than termination for his unauthorized leave on May 27, 2005. However, the undisputed evidence demonstrates that the basis for removal occurred while Brooks was a probationary employee, as was the decision to terminate him. The letter of discharge is dated June 20, 2005 – six days prior to the end of the probationary period. Def. Facts Ex. 2a. The letter was originally sent to Brooks on June 24, 2005 to his prior address, evidencing the Department's desire to terminate Brooks during the probationary period. *Id.* at Ex. 2b. Brooks' contention that he was a career employee at the time of his termination is not supported by the record. He was on probationary status when the Department decided he should be terminated. Def. Facts ¶ 26.

### B. The Department's Legitimate Employment Expectations

Brooks is required to establish specific facts in order to create a genuine issue as to whether he was meeting the Department's legitimate expectations as a probationary employee. *See Williams v. General Mills, Inc.*, 926 F. Supp. 1367, 1377 (N.D. Ill. 1996) (failure to offer any evidence that plaintiff performed his job satisfactorily defeats his case) (Conlon, J.). This inquiry

5

is more aptly characterized as simply *bona fide* expectations. *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1090 (7th Cir. 2000). In other words, so long as the Department's employment expectations were in good faith, without fraud or deceit, the court will only determine if Brooks met them. *Id.* Brooks does not show that the Department's expectations were in bad faith. Rather, he argues that he satisfied the Department's expectations. He relies on the fact that he received a recommendation for permanent hire on March 23, 2005, and performed satisfactorily when he followed standard leave procedure on the date he left his post prematurely.

The critical issue is whether Brooks was performing well at the time of his termination. *See Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1262 (7th Cir. 1993) (citation omitted); *Karazanos v. Navistar Intern. Transp. Corp.*, 948 F.2d 332, 336 (7th Cir. 1991); *Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998) ("earlier evaluations cannot, by themselves, demonstrate the adequacy of performance at the crucial time when the employment action is taken"). Because Brooks' satisfactory March 23, 2005 performance report was issued prior to the termination incident, the report does not have a direct bearing on the analysis concerning whether Brooks' performance was satisfactory on the termination date. *See Fortier*, 161 F.3d at 1113. More importantly, the author of the March 23, 2005 recommendation, Chief Brown, is the same individual who later recommended Brooks' termination after the May 27, 2005 incident.

Brooks maintains there is a disputed material fact whether he met the Department's legitimate expectations when he left his post on May 27, 2005. He argues he requested leave according to standard operating procedures. He contends Officer Unthank failed to follow standard procedure in not communicating and authorizing his request. Drawing all reasonable

6

inferences in Brooks' favor, there is no dispute he knowingly left his post without authorization. Def. Facts ¶ 24. He acknowledges Officer Unthank advised him that he had no authority to grant the leave request. Def. Facts ¶ 19. Brooks left his post because in his own personal judgment, a supervisor, if available, would have granted him permission to leave. Pl. Facts Ex. 9 at 42-43. Brooks left his post without permission from an authorized party. This requirement is communicated to all officers during their orientation at the onset of employment. Def. Facts ¶ 10; *see also* Def. Facts Ex. 1 ¶ 5; Ex. 1b. The unauthorized leave impairs Brooks' ability to show that he met the Department's expectations of a probationary employee. Def. Facts Ex. 7; Ex. 2a.

## C. Disparate Treatment of Similarly Situated Employees

Even if Brooks could establish that his conduct conformed with the Department's legitimate expectations, Brooks has not presented any evidence that similarly situated employees outside his protected class were treated more favorably. To determine whether employees are similarly situated, the court's inquiry is a flexible one that considers "all relevant factors, the number of which depends on the context of the case." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) (citation omitted). "An employee is similarly situated to a plaintiff if the two employees deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 540 (7th Cir. 2007); *see also Perez v. Illinois*, 488 F.3d 773, 776 (7th Cir. 2007) (similarly situated employee is one who is comparable to plaintiff in all material respects). The purpose of the similarly situated test "is to determine whether there are enough common factors

between a plaintiff and a comparator - and few enough confounding ones - to allow for a meaningful comparison in order to divine whether discrimination was at play." *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007).

Brooks contends there are two similar situations in which dispatchers were granted leave by Officer Unthank without incident. Officer Unthank previously processed emergency leave requests for Evon Mordican, a dispatcher, and Fred Clark, a Caucasian officer. In contrast, Brooks argues Officer Unthank failed to process his leave request by failing to communicate his request to Sergeant Henderson and failing to note it in the daily operations journal.

Brooks fails to present any evidence that Mordican's and Clark's situations are similar to his. He offers no evidence that Mordican and Clark took leave without permission and were treated differently as a result. With respect to Mordican, there is no indication that she is of a different race than Brooks, nor does he show that Mordican did not personally call Sergeant Henderson to request leave. Pl. Facts Ex. 7 at 42. There is no evidentiary basis to support a reasonable inference that Brooks and Mordican were similarly situated.

Brooks contends Clark was similarly situated and was granted sick leave, but merely points to a daily operations log indicating Clark requested sick leave. Brooks does not provide any evidence to show Clark went on leave without authorization, that he was a probationary employee, or that Clark was treated differently for requesting and taking leave without authorization. Rather, Brooks contends that Clark's leave was processed and recorded by Officer Unthank on a daily operations journal. There is no evidence that Officer Unthank actually processed Clark's leave request, nor is there any evidence that the daily operations journal entries

8

have anything to do with the leave process. The record is insufficient to draw any comparison between Clark and Brooks.

## D. Pretext

Assuming that Brooks could establish a *prima facie* case of race and age discrimination, summary judgment would be warranted because Brooks has not demonstrated that the Department's proffered reason for his termination was a pretext for discrimination. Pretext may be established by showing the Department's explanation is unworthy of credence or that a discriminatory reason more likely motivated the termination decision. *Debs v. Northeastern Ill. Univ.*, 153 F.3d 390, 395 (7th Cir. 1998) (citation omitted); *see also Tucker v. Loyola Univ. of Chicago*, 192 F. Supp. 2d 826, 833 (N.D. Ill. 2002) (Castillo, J.). Pretext in this context does not mean a mistake; rather, it means "a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). An honest belief in the nondiscriminatory reasons offered by the decision-maker will be sufficient "even if the reasons are foolish, or trivial or even baseless." *Debs*, 153 F.3d at 396.

The Department had broad discretion to determine whether Brooks' actions on May 27, 2005 indicated that he was unfit for continued employment. Def. Facts ¶ 31. Police officers have a high incentive to comply with police service rules during their probation, and the probation period is an opportunity to identify and take appropriate action regarding employees who pose discipline issues. Def. Facts Ex. 7. Consequently, the Department determined that Brooks would be terminated due to his unauthorized abandonment of his shift on May 27, 2005. Def. Facts. Ex. 2a.

Brooks contends there is evidence of pretext because he was not given notice of his termination until after his probationary period ended and Officer Unthank did not process his leave request in contrast with leave granted to other officers. Brooks does not explain why the delay in delivery of notice establishes a racial or age pretext for his removal. Brooks was advised he was terminated for abandonment of his post without authorization on May 27, 2005. It is undisputed that the Department's decision to terminate him was made during Brooks' probationary period. Therefore, whether Brooks received termination notice after the probationary period is not relevant to an analysis of whether the Department's decision was discriminatory.

Additionally, the restated allegations regarding Officer Unthank's conduct is also inconsequential to show pretext on the part of the Department. Officer Unthank's conduct is unrelated to whether Brooks knowingly left his shift without authorization. Additionally, there is no evidence that Officer Unthank had anything to do with the Department's decision to terminate Brooks for his unauthorized leave. *See generally, Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 397 (7th Cir. 1997) (purported discriminatory statement by non-decisionmaker not relevant to inquiry into alleged age-based motivations for terminating plaintiff); *Testerman v. EDS Tech. Prods. Corp.*, 98 F.3d 297, 301 (7th Cir.1996) (same, and collecting numerous cases). Therefore, Brooks has failed to show any inference that the Department discharged him for a dishonest or pretextual reason. The court will not decide whether the decision to terminate him was otherwise appropriate. *See, e.g., Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) (the court does not sit as a superpersonnel department that reexamines an entity's business decision and reviews the propriety of the decision); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d

10

1568, 1572 (7th Cir. 1989) (same); *Tucker*, 192 F. Supp. 2d at 833 (the court is not entitled to second guess an employer's business decisions).

## CONCLUSION

Brooks has not offered evidence sufficient to establish a *prima facie* case of race or age discrimination. He fails to proffer any evidence that would support a reasonable inference that the stated reason for his discharge was pretextual. Accordingly, the Department's motion for summary judgment is granted.

ENTER:

*Suzanne B. Conlon*

Suzanne B. Conlon
United States District Judge

October 16, 2007